Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for the Appellant, Mr. Usher. I'd like to reserve two minutes of my time for rebuttal. Mr. Usher is here appealing his convictions for bank fraud and aggravated identity theft. The first thing I want to turn to briefly is the case raised in the government's 28-J letter, because I think the holding of that case is inapposite here, but its analysis is very helpful. In that case, the defendant actually used a name. He wrote the name on the Medicare claim form during the health care flood case, and the court said that's not enough. Here, our case, our challenge, the use element arises out of the fact that Usher didn't use the ATM card. The customers kept their cards. Usher didn't ever have them or know what was on them. So we're claiming the holding is inapposite. But if you look at the reasoning employed by the Hong case, along with the case that it relies on, the Barot case from the First Circuit, the Medlock case from the Sixth Circuit, they find the statute is ambiguous. The court looks at the language and design of the statute as a whole. The court looks at canons of statutory construction. The meaning of an undefined term may be deduced from nearby words. The court says when a plain reading leads to ambiguous or unreasonable results, we may look to legislative history to interpret a statute. The court refers to the limitless nature of the government's construction of the statute, and the court applies the rule of lenity, which requires ambiguous criminal laws to be interpreted in favor of the defendants. So based upon the ambiguity of the statute, the rules of statutory construction, the rule of lenity, the legislative history, the courts read into the statute a limiting construction that effectuates its legislative purpose. In this case, I'm sorry. What do you say is ambiguous? Well, I want to turn, we claim that the word use is ambiguous as applied to the element of the use of the ATM card. But I also want to turn to another claim that we're raising, and that is the consecutive sentences for aggravated identity theft. In that context, we're claiming that what is ambiguous is the notwithstanding any other provision of law, is that Federal law or Federal and State law. And that's, I want to turn to that because I think it's helpful in analyzing that particular issue. The Supreme Court decided that issue? I'm sorry? Hasn't the Supreme Court decided that issue? I don't think so. I think there are a number of cases interpreting that phrase, notwithstanding any other provision of law, and they look to what the Congress intended when it wrote that phrase. In this case, the probation officer initially recommended concurrent sentences. Well, just a minute. I thought my colleague's question was pretty good. How do you distinguish United States v. Gonzalez? It seems to me United States v. Gonzalez is right on. Identical language in a similar statute means all other terms, specifically including State terms. That's what they said in Gonzalez. Okay. I apologize, Your Honor. I don't have that. Oh, I see. Okay. I do. My notes on that are that they're, in that case, they're talking about a different statute. They're talking, yeah, I know it's different, but it's similar. And they said all means the State terms. Well, I think... That's what they said. I understand, Your Honor. I think that it's a little bit different in that it's... What's the difference? I mean, there's similar statutes. They're talking about exactly the same kind of stuff, and we're trying to determine what this all means. That's what they're focusing on. And they said it includes the State terms. But there are other cases in which they construe that provision, notwithstanding any other provision of law, not to be completely unlimited, to be directed at what Congress intended in the statute. Seems pretty tough with Gonzalez. I mean, they were right on that all. They weren't trying to deal with any other question. So that's the only thing. I didn't mean to interrupt you. No. Thank you. I appreciate your concerns. I think that it's distinguished in the briefs in that they're dealing with a different provision. They use their provision twice. In this case, and there are other cases construing that provision to say, we look to what Congress wanted to encompass. And in this case, we know from the legislative history that Congress did not want to encompass State laws. The legislative history is discussed in our briefs. And what Congress was doing when it enacted this provision was talking about the federal sentencing guidelines. They were concerned because in the sentencing guidelines, it would group together the identity theft conviction and the underlying conviction. And so there would be no additional time for the identity theft conviction. Therefore, there was no incentive to charge that conviction. Are you still on, Gonzalez? The words, the term, any and the absence of any restrictive language left no basis in the text for limiting the phrase to any other term of imprisonment to federal sentences. That's what they said. Well, I think, Your Honor, there are other cases construing that language. And I think that they look at what Congress intended. Well, maybe you better go back here about insufficiency of evidence. Are you ever going to get to that one? The insufficiency of evidence? Yes, Your Honor. I understand you don't dispute on the aggravated identity theft. You don't dispute that the defendant knew that the means of the ID belonged to a real person or that the defendant did so during in relation to the felony violation of one of the offenses. Those are the three last, two and three. What you're disputing is whether he knowingly transferred, possessed, or used without legal authority a means of ID of another person, correct? That's correct, Your Honor. So if that's the truth, are we not looking at the district court's factual finding on this issue? In my book, we're talking about was the evidence sufficient. So we're looking at sufficiency of the evidence. And the district court said there was sufficiency of the evidence. And it seems to me that I cannot do that unless it's clearly erroneous. Okay. I'm sorry. Are you finished? Well, no. And if it's clearly erroneous, the district court said the defendant input the account holder's PIN. The testimony was the victim's testimony was that he completed the transaction. He was corroborated by the switch reports, the bank officer's testimony, the reentry of the PIN is necessary for the second transaction. There are exhibits supporting that. The video shows that Dee was hovering over the victims and then conducted a second transaction after the first. And Dee pleads guilty admitting he immediately did withdraw money from the account, which is confirmed by the switch reports. Now, how can that be clearly erroneous? No, I agree with Your Honor there. I mean, we're also arguing that an ATM PIN is not a means of identification. And you're going to go with the means of the ID? Yes. Okay. And in that case, I understand Your Honor's concern about findings of fact. In the Hong case in the 20HA letter, the court said that they made a similar claim of insufficient evidence, and the court said it's also a statutory construction argument, which is a legal argument which we reviewed de novo. And essentially, that's what it is. We're arguing that an ATM PIN is not a means of identification. And I know I've only got two more minutes of time, so do you want me to go into that or do you have any further questions? Use it the way you want. I asked the question I did, and you went to another issue, which I think was your weaker issue, but go ahead. Okay. Thank you. I'll reserve the remainder of my time then. Thank you. Okay. All right. We'll hear from the government. Good morning, Your Honors. Daniel Lim from the United States, and may it please the Court. I'll pick up right where Your Honors left off. And we welcome the de novo review to the extent that that's the review for whether a PIN is a means of identification. A PIN is a means of identification under three parts of the relevant statute, 1028-D7. First, under the broad introductory language, which states that a means of identification is any name or number that may be used by itself or in conjunction with any other information to identify a specific individual. Is a PIN a number? Yes. Can it be used to identify a specific individual? Yes. We know we heard testimony from bank employee witnesses who stated as such, and we know that from our common experiences. So it meets the definition of a means of identification under the broad introductory statute, which this Court in Blixit stated when Congress used the word any, it reflected their intention to construct an expansive definition. Secondly, it falls under one of the enumerated sections under 1028-D7, and subsection C, as the District Court found below. It is specifically a unique electronic identification number because, as the Court found, a PIN is used to execute electronic transactions. It's exactly what the victims did here, and that's exactly what the defendant did here unlawfully when he impersonated them at the ATMs after his victims left and stole money from their accounts. Third, a PIN can also fall under subsection D of the same statute, which states that any access device, as defined under 1029-E, can also be a means of identification. An access device is similarly defined broadly. An access device is, among other things, any code, personal identification number, or any other means of account access that can be obtained by itself or in conjunction with any other access device to essentially obtain money. Once again, a PIN is a code. It is a code that you need to obtain access into your ATM account. It is, by its very nature, a personal identification number, and it's also one means of account access. That's undeniable and undisputed. So your opponent argues that the number can't be used to identify a specific individual. That's incorrect, Your Honor. The number can be used to identify a specific individual. We hear testimony again from Ms. Marroquin, the Bank of America employee. We know that, to the extent that there's a four- to six-digit permutation that any customer can set up, depending on the complexity of that PIN, that can be used to identify an individual. But not by itself. We can take — it can be used in conjunction with an ATM card to identify an individual, but, Your Honor, very well could be — one PIN number could be used by itself to identify an individual, depending on the complexity of the PIN. But, Your Honor — It seems to me that the number in conjunction with another information can be used to identify — That's correct, Your Honor. And for that reason alone, it would fall under the means of — I mean, that's all you need. Yes, Your Honor. The number's not unique to a person, I guess. That's right. I mean, what, it's like 25 percent of the people have, you know — stupidly have, like, zero, zero, zero, zero as their PIN? Yes, Your Honor. It's ill-advised. And in the same vein, Your Honor, many people have the same name. So to the extent that that could be paired with another piece of information, those two — the pairing of those two, if it identifies an individual, it's a means of identification. Briefly discussing use, not to belabor the point, but Your Honors are correct. Gonzalez is on point in this case. Looking to the same exact phrase, just in a different statute, the Supreme Court did find that any other term of imprisonment meant state and federal prison sentences. Also helpfully, Gonzalez listed other statutes that contained similar phrases where they interpreted — the interpretation, which was very similar. For example, there was a statute that Gonzalez discusses involving any law enforcement officer, and that was construed to mean any state or federal law enforcement officer. They construed the phrase any courts, and they thought that to mean any state and federal courts as well. So the — you know, pursuant to Hong and Gonzalez, it's clear that the defendant here, when he swooped into those ATMs, after his victims left those ATMs, re-input their PINs. After the ATM prompted him to re-enter your PIN number for your security, and when your referred not to him, but to his victims, he impersonated them, passed himself off as his victims, and used their account information and the PINs to access their accounts and steal money. And for those reasons, Your Honors, there's — unless there's any other questions, we — I've established that a PIN is a means of identification, that a PIN was used. I think those are the essential issues raised on appeal here. The government urges affirmance, and we submit. Okay. Thank you. You really don't want everything affirmed. You want it remanded on the — Correct, Your Honor. I apologize. Remanded for — to the extent that the supervised release conditions are at odds with Evans. Yeah. Thank you, Your Honors. Thanks very much. We have some time for rebuttal. Thank you, Your Honors. One method of distinction that I wanted to point to in the Gonzalez opinion is that the Gonzalez Court found it significant that Congress expressly limited the phrase any crime to federal crimes in one part of the statute, and they found it significant that no similar restriction modified the phrase, which appeared only two sentences later. I also wanted to turn to the issue of a PIN being used. The PIN does not provide a means of identification. The bank does not know what the PIN is. The bank cannot identify anyone through the PIN. It doesn't keep any record of the PIN. And the statute requires that for it to be a means of identification, the PIN has to be used, although it does say a loaner in conjunction with — Yeah, that's the key thing. That's in conjunction. The PIN has to be used. Right. And the PIN cannot be used. Well, they — I mean — That's our argument. Yeah. And your argument might have worked until, I think, they recalled one of those bank employees to say that in each of these transactions, the person actually did get the out, as your client did, is to reenter the PIN. I understand that, Your Honor. I'm turning to the statutory construction issue of whether or not the PIN constitutes a means of identification. Well, it is, in combination with the information that's stored on the magnetic code of the ATM card. So that just doesn't seem to get you anywhere. I mean, it seemed to me you had an argument that maybe he didn't actually input the PIN, that maybe ran up while they just left a live session going, and he never had to enter any information. And maybe you would have an argument there. But it seems to me they closed the door on that at trial with the testimony of the bank employee. Yes, Your Honor. I mean, we're focusing on the issue that — I think that the word use, the PIN has to be used as a means of identification. And I know the statute says a loaner in conjunction with, but in this case, the PIN cannot be used as a means of identification, according to the evidence. Well, why — I'm sorry. But why is that important when it's a loan or in conjunction with other information? Because I'm focusing on the term use. It has to be used. And it can't be — it itself is — has no use as a means of identification. I don't understand, but I hear your argument. Thank you, Your Honor. Okay. Thank you. The case just argued is submitted.
judges: N.R. Smith, Watford, Korman